IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Case No. 06-cv-00659-LTB-PAC

STEPHEN STARKEY, and
BEDRA STARKEY, on behalf of themselves and on behalf of
JENNIFER STARKEY,
ALYSSA STARKEY, and
JOHN STARKEY,

       Plaintiffs,
v.

BOULDER COUNTY SOCIAL SERVICES,
DOREEN MILLER,
BRIAN RUSSELL,
HOLLY SMITH,
BARBARA PARK,
JULIE KINTZING, and
ANN BALDWIN, in their individual and official capacities,

       Defendants.

_____

ORDER
_____

This case is before me on a Motion to Dismiss [Doc # 5] filed by Defendants, Boulder County Social Services ("BCSS"), Doreen Miller, Brian Russell, Holly Smith, Barbara Park, Julie Kintzing, and Ann Baldwin, in both their individual and official capacities, in which they seek a dismissal of the amended complaint filed in this matter by Plaintiffs, Stephen and Bedra Starkey, on behalf of themselves and on behalf of Jennifer, Alyssa and John Starkey. Defendants assert, among other things, that Plaintiffs' claims against them are barred by various immunity doctrines. Oral argument would not materially assist me in my determination. After consideration of this

motion, as well as all related pleadings and supplemental briefing, and for the reasons set forth below, I conclude that Defendants' motion should be GRANTED in part and DENIED in part.

## I. Background

In their amended complaint, Plaintiffs contend that Defendants have deprived Plaintiffs Stephen and his spouse, Bedra, of parental rights and visitation with Stephen's children, Plaintiffs Jennifer, Alyssa and John Starkey (the "children"). They also assert that Defendants have likewise conspired to deprive the children of visitation with Stephen and Bedra (the "Starkeys"). Specifically, Plaintiffs allege actions by the Defendants during the course of a Colorado state court dependency and neglect proceeding regarding the children which evidence a conspiracy and a custom or policy to discriminate against Plaintiffs based on Defendants' disapproval of persons with "fundamental" Christian views. As a result, Plaintiffs aver that Defendants have, under color of state law, subjected Plaintiffs to deprivation of their rights "to freedom of religion and non-establishment of religion in the First Amendment, and their rights to due process in the Fourteenth Amendment." As a result, Plaintiffs seek compensatory damages and injunctive relief, as well as punitive damages and attorneys fees, for deprivation of their constitutional rights in violation of 42 U.S.C. § 1983. They also seek damages for the following state law claims: breach of fiduciary duty; defamation; negligence; infliction of emotional distress; and conspiracy.

## II. Motion to Dismiss/Summary Judgment

I note that both Plaintiffs and Defendants attempt to rely on evidence and factual allegations in their briefing here that are outside the amended complaint. Generally, a motion to dismiss for failure to state a claim upon which relief can be granted must be converted into a

motion for summary judgment whenever the district court considers matters outside the pleadings. Fed. R. Civ. P. 12(b). Courts have broad discretion in determining whether or not to accept materials beyond the pleadings. *Lowe v. Town of Fairland, Okl.,* 143 F.3d 1378, 1381 (10th Cir.1998). I presume no discovery has been conducted in this case, and none of the parties specifically request that I convert the motion into one for summary judgment. As a result, I decline to consider matters outside of the pleadings at this time. Based on this ruling, I deny Defendants' request for a continuance (as set forth on page 6 of their response brief) for discovery pursuant to Fed. R. Civ. P. 56(f).

### III. *Rooker-Feldman* Doctrine

As a threshold matter, I first address and reject Defendants' jurisdictional argument that all of Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine which states that federal district courts lack appellate jurisdiction to review state court decisions reached in judicial proceedings. *See* 28 U.S.C. § 1257(a)*; District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

"It is well settled that federal district courts are without authority to review state court judgments where the relief sought is in the nature of appellate review." *Anderson v. State of Colorado*, 793 F.2d 262, 263 (10th Cir. 1986). The *Rooker-Feldman* doctrine provides that federal district courts lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005);

*Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1142-43 (10th Cir. 2006). However, the doctrine "does not bar federal-court claims that would be identical even had there been no state-court judgment; that is, claims that do not rest on any allegation concerning the state-court proceedings or judgment." *Id.* at 1145.

Defendants argue that Plaintiffs are claiming that the custody and visitation decisions that were made in the state dependency and neglect action violated their civil rights. As a result, Defendants assert that Plaintiffs are impermissibly asking this court to "either overrule matters decided in the state dependency and neglect case, or grant relief that is inextricably intertwined with it." I disagree, however, with Defendants' characterization of Plaintiffs' claims. Plaintiffs are not directly challenging the state court rulings made in the underlying dependency and neglect proceedings. The propriety of those determinations – *e.g.* the rulings that allegedly removed the children from the Starkeys' custody, placed them in foster care, and denied Plaintiffs visitation with each other – are not being reviewed by me in this lawsuit. Rather, the conduct being challenged here is the alleged unconstitutional actions by Defendants during the pendency of that state action.

In *Bolden v. City of Topeka, Kan., supra*, the Tenth Circuit illustrated the applicability of the *Rooker-Feldman* doctrine in the following hypothetical:

> say a father was deprived of custody of his child by a state-court judgment. If he files suit in federal court, seeking to invalidate the state-court judgment on the ground that the state-court proceedings deprived him of due process or that the judgment was otherwise contrary to federal law, his suit would be barred by *Rooker-Feldman*; the suit usurps the Supreme Court's exclusive appellate jurisdiction because it seeks to set aside the judgment based on a review of the prior proceedings. If, however, the father simply brought suit in federal court seeking custody of his child, without raising any complaint about the state-court proceedings, *Rooker-Feldman* cannot be invoked; his federal claim would have

4

been the same even in the absence of the state-court judgment. *Id.* at 1145.

Here, Plaintiffs are not seeking to undo the custody and visitation determinations made in the underlying dependency and neglect matter by the state court; rather, the relief sought consists of damages for alleged past unconstitutional actions and injunctive relief against future unconstitutional behavior by Defendants. "When the state-court judgment is not itself at issue, the doctrine does not prohibit federal suits regarding the same subject matter, or even the same claims, as those presented in the state-court action." *Id.* at 113. Therefore, I conclude that Plaintiffs claims before me in this suit are not jurisdictionally barred by *Rooker-Feldman.*

### IV.  Doctrine of Collateral Estoppel/Issue Preclusion

In a related argument, Defendants assert, for the first time in their reply briefing, that Plaintiffs claims are barred by the doctrine of collateral estoppel which precludes the re-litigation of issues that have been raised and decided by the dependency and neglect action in state court.

Collateral estoppel, also known as issue preclusion, refers "to the effect of a judgment in foreclosing re-litigation of a matter that has been litigated and decided." *Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 376 n. 1, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). Collateral estoppel renders a final decision of an adjudicative body on an issue actually litigated conclusive as to that issue in a subsequent action. *Terrones v. Allen,* 680 F.Supp. 1483, 1487 - 1488 (D. Colo. 1988)(*quoting Pomeroy v. Waitkus*, 183 Colo. 344, 350, 517 P.2d 396, 399 (1973)). Under Colorado law, collateral estoppel bars the re-litigation of an issue determined at a prior proceeding if:

(1) the issue previously decided is identical with the one presented in the action in

> question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation* 975 F.2d 683, 687 (10th Cir. 1992). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* at 686 (*quoting Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)).

Defendants argue that "Plaintiffs have had a full and fair opportunity to litigate their custody and visitations concerns in the state dependency and neglect action [and] [t]herefore, they are precluded from arguing the issue again in federal court." However, Defendants have not adequately discussed the specific relevant issues that the state court in the dependency and neglect proceedings decided, nor did they compare those issues with the issues before me. As it is not this Court's duty to flesh out Defendants' arguments, to the extent that Defendants' motion to dismiss is based on a theory of collateral estoppel, it is denied. *See Reeder v. Kermit Johnson, Alphagraphics, Inc.,* 723 F.Supp. 1428, 1435 (D.Utah 1989).

## V.  §1983 [First Claim for Relief]

A. Social Services Defendants

In their amended complaint, Plaintiffs assert a deprivation of constitutional rights claim pursuant to 42 U.S.C. § 1983 against Defendant BCSS and the remaining individual Defendants in their official capacity (collectively, the "social services Defendants"). Plaintiffs allege that the social service Defendants' actions violated the free exercise clause of the First Amendment, which

prohibits governments from regulating religious beliefs, and their interest in familial relations as protected by substantive due process under the Fourteenth Amendment. The social services Defendants argue, among other things, that Plaintiffs' § 1983 claim against them should be dismissed because it is barred by the Eleventh Amendment. I agree to the extent Plaintiffs seek damages against the social services Defendants. Plaintiffs' claim for prospective injunctive relief against these Defendants is addressed *infra*.

The Eleventh Amendment prohibits damage actions against a state in federal court, even by its own citizens, unless the state waives that immunity, which is not the case here. *See U.S. Const. Amend. XI; Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Although the bar of the Eleventh Amendment to suits in federal courts extends to States and state officials in appropriate circumstances, it "does not extend to counties and similar municipal corporations." *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). However, state governmental bodies that are "arms of the state" enjoy Eleventh Amendment immunity, as opposed to political subdivisions such as counties and cities which do not. *Sturdevant v. Paulsen*, 218 F.3d 1160, 1165 (10th Cir. 2000). Therefore, if a governmental entity is deemed to be an arm of the state of Colorado, then there is no question that the Eleventh Amendment shields it from liability under § 1983. *Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989).

In order to determine whether a particular governmental entity is an arm of the state, and is thus entitled to Eleventh Amendment protection, I apply the following factors first set forth *Mount Healthy v. Doyle, supra*:

> (1) the characterization of the governmental unit under state law; (2) the guidance and control exercised by the state over the governmental unit; (3) the degree of

7

        state funding received; and (4) the governmental unit's ability to issue bonds and levy taxes on its own behalf.

    At the onset, I note that in 1994, the Colorado State Legislature re-designated what were formerly referred to as state and county departments of "social services" as departments of "human services." *Colo. Rev. Stat.* § 26-1-105.5(1)(a). As a result, the analysis applied to human services and social services departments in Colorado is identical and the terms are used herein interchangeably.

    In *Freeman v. White*, 2006 WL 2793139 (D. Colo. Sept. 28, 2006), Judge Nottingham recently addressed the question whether county human services departments in Colorado are arms of the state. Judge Nottingham noted that although the Tenth Circuit has yet to pass on the issue, courts in this district, as well as a long line of state precedent, have repeatedly applied the *Mount Healthy* factors to hold that Colorado county human services departments are arms of the state under the Eleventh Amendment. *Id.* at pg. 9 (listing cases); *see also Pierce v. Delta County Dept. of Soc. Srvs.,* 119 F.Supp.2d 1139, 1147 (D. Colo. 2000). Despite the breadth of the pre-existing legal authority, Judge Nottingham again revisited the *Mount Healthy* factors to conclude that a county department of social services in Colorado "is in all cases an arm of the state for purposes of Eleventh Amendment immunity." *Freeman v. White, supra*, at pg. 9. When applying the factors, Judge Nottingham first found that Colorado provides the broad state control over the county departments of human services pursuant to explicit statutory provisions. *See Colo. Rev. Stat.* § 26-1-118(1)(Colorado county departments of social services are explicitly designated as agents of the state department and are bound to act "in accordance with the rules and regulations of the state department"); *Colo. Rev. Stat.* § 26-1-118(2) ("[t]he county departments . . . shall report to the state department at such times and in such manner and form as the state department

may from time to time direct."); *see also Colo. Rev. Stat.* §§ 26-1-119, *et seq.* (setting forth further provisions that place county departments squarely within the purview of the state department of human services). In addition, Colorado law indicates that departments of human services themselves have no power to issue bonds or levy taxes on their own behalf. *See Colo. Rev. Stat.* § 26-1-125(1) (requiring boards of county commissioners to make human services levies). Finally, although Judge Nottingham found that the ultimate liability for any judgment remains"uncertain," he noted that the state is the predominant source of funding for county social services departments, *see Colo Rev. Stat.* § 26-1-123(1), and that no statutory provision exists for allowing social services departments to use their own funds to satisfy money judgments awarded against them. *Id.* at page 10. I find Judge Nottingham's exhaustive analysis and reasoning in *Freeman v. White, supra*, persuasive and, as a result, I adopt it here.

Therefore, I conclude that Defendant BCSS is an arm of the state of Colorado and, as such, is entitled to absolute immunity pursuant to the Eleventh Amendment. This holding extends to Plaintiffs' § 1983 claim against the individual Defendants acting in their official capacities, who are likewise entitled to immunity. *Id.* at pg. 12 (*citing Will v. Michigan Dept. of State Police,* 491 U.S. 58, 70-711, 109 S.Ct. 2304, 105 L.Ed. 2d 45 (1989)); *see also Pennhurst State School & Hosp. v. Halderman*, supra, 465 U.S. at 121; *Cobb v. City and County of Denver, State of Colo.,* 761 F.Supp. 105, 106 (D. Colo. 1991). As a result, Defendants' motion to dismiss Plaintiff § 1983 claim against the social services Defendants is granted.

B. Individual Defendants

As to the Plaintiffs' § 1983 claim against the individual Defendants acting in their individual capacity (collectively, the "individual Defendants"), Defendants seek dismissal on the

basis that this claim is barred by the doctrine of qualified immunity. The individual Defendants assert that they are entitled to qualified immunity because Plaintiffs have failed to allege a constitutional depravation based on the vague and conclusory allegations in their complaint and, even if they adequately asserted a violation of a constitutional right, any such right was not clearly established. Because Plaintiff's amended complaint states facts that, when accepted as true, adequately state a § 1983 claim, I conclude that the individual Defendants are not entitled to qualified immunity for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Qualified immunity is a judicially created affirmative defense which protects state officials sued in their individual capacity for civil damages under 42 U.S.C. § 1983. *See DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001). Qualified immunity generally shields from liability "government officials performing discretionary functions ... insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In analyzing the qualified immunity defense, the Tenth Circuit has adopted a three-part inquiry. *Gomes v. Wood,* 451 F.3d 1122, 1134 (10th Cir. 2006), *petition for cert. filed*, 75 U.S.L.W. 3177 (U.S. Sept. 20, 2006)(06-42).

The first inquiry is whether the plaintiff's allegations, if true, establish a constitutional violation. *Id.* (*citing Lawrence v. Reed,* 406 F.3d 1224, 1230 (10th Cir. 2005)). If the allegations do not meet that standard, the claim must be dismissed.

If the plaintiff has adequately alleged a constitutional violation, the second inquiry is "whether the law was clearly established at the time the alleged violations occurred." *Gomes v. Wood*, *supra*, 451 F.3d at 1134 (*quoting Roska ex. rel. Roska v. Peterson,* 328 F.3d 1230, 1247

(10th. Cir. 2003)). The law is clearly established if a reasonable official in the defendant's circumstances would understand that her conduct violated the plaintiff's constitutional right. *Moore v. Guthrie,* 438 F.3d 1036, 1042 (10th Cir. 2006). The Supreme Court has "shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Pierce v. Gilchrist,* 359 F.3d 1279, 1298 (10th Cir. 2004) (*discussing Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). "Thus, government officials must make reasonable applications of the prevailing law to their own circumstances, and they can still be on notice that their conduct violates established law even in novel factual circumstances." *Gomes v. Wood, supra,* 451 F.3d at 1134 (internal quotations and citations omitted). However, the defendant official may demonstrate that he or she "neither knew nor should have known of the relevant legal standard" because the law was not clearly established at the time he or she acted, as an official is not required to anticipate future developments *Id. (quoting Harlow v. Fitzgerald, supra,* 457 U.S. at 819).

Finally, if the law was clearly established, the third part of the inquiry asks whether "extraordinary circumstances" – such as reliance on the advice of counsel or on a statute – so prevented the official from knowing that his or her actions were unconstitutional that he or she "should not be imputed with knowledge of a clearly established right." *Id. (quoting Roska ex. rel. Roska v. Peterson, supra,* 328 F.3d at 1251).

Because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), whether a defendant is entitled to a qualified immunity defense is a question of law that should be

11

resolved at the earliest possible stage. *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir.1995)(*quoting Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

Although summary judgment provides the typical vehicle for asserting a qualified immunity defense, such defense may be reviewed on a motion to dismiss. *Peterson v. Jensen,* 371 F.3d 1199, 1201 (10th Cir. 2004)(*citing Mitchell v. Forsyth*, *supra,* 472 U.S. at 526). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen, supra,* 371 F.3d at 1201.

In reviewing a qualified immunity defense on a Fed. R. Civ. P. 12(b)(6) motion, the court must accept all well-pled allegations of the complaint as true and consider them in the light most favorable to the nonmoving party. *Id.* Furthermore, "a district court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 1201-02 (*quoting Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001)).

I begin with the first qualified immunity inquiry – whether Plaintiffs' allegations, if true, state a constitutional violation. In their amended complaint, Plaintiffs allege that various actions by the individual Defendants violated their rights under the free exercise clause of the First Amendment to freedom of religion and their substantive due process right to family integrity in the Fourteenth Amendment. Unquestionably, the free exercise clause of the First Amendment guarantees the establishment of religion and the free exercise thereof. U.S. Const. amend I. Likewise, under the Fourteenth Amendment, parents have a protected liberty interest in the care,

custody and control of their children.  *See Lehr v. Robertson,* 463 U.S. 248, 258, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983); *Gomes v. Wood*, *supra*, 451 F.3d at 1127; *Martinez v. Mafchir*, 35 F.3d 1486, 1490 (10th Cir. 1994)(listing cases).  Finally, the associated right of familial association is also an established substantive due process right.  *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993); *Trujillo v. Board of County Comm'rs of Santa Fe County*, 768 F.2d 1186, 1988 (10th Cir. 1985).

In their amended complaint, Plaintiffs allege that the individual Defendants, acting under the color of state law, conspired to prohibit and/or severely limit the Plaintiffs' contact with each other based on their disapproval of Plaintiffs' religious views.  Plaintiffs' complaint sets forth several specific incidences that exemplify this alleged disapproval.  For example, Plaintiffs allege that Defendants Miller, Russell and /or Smith "prohibited Stephen Starkey from any contact with the children, and severely restricted any contact between Bedra Starkey and the children, because of the Starkeys' religious faith." [Comp. ¶ 9]  Plaintiffs also aver various improper actions by the individual Defendants over the course of their dependency and neglect investigation – such as attempts to keep the children from seeing the Starkeys "despite the clear and obvious lack of any evidence of misconduct or conduct causing danger to the children" – that resulted in a violation of the Plaintiffs substantive due process rights related to family integrity. [Comp. ¶ 17]  The amended complaint asserts that "Defendants actions were motivated by evil motive or intent, or involved reckless or callous indifference to the federally protected rights of Plaintiffs and others similarly situated." [Comp. ¶22]  I want to emphasis, of course, that a developed fact record may not support such allegations, but my Fed. R. Civ. P. 12(b)(6) review is confined to determining the sufficiency of the allegations in Plaintiffs' complaint.  I conclude that Plaintiffs' amended

complaint identifies the constitutional rights they alleged have been violated and the various acts made by the individual Defendants, if true, that resulted in a depravation of constitutional rights.

Because I have determined that Plaintiffs' have adequately alleged a constitutional violation at the Fed. R. Civ. P. 12(b)(6) stage, I must next determine if the law was clearly established; specifically if a reasonable official in the individual Defendants' circumstances, as alleged, would understand that their conduct violated Plaintiffs' constitutional rights. In making this determination I am to assess whether the law at the time put the individual Defendants on fair notice that their alleged conduct was unconstitutional. Here, the allegations in the amended complaint are, in essence, that the individual Defendants' acts were not in furtherance of the welfare of the children, but rather that they were intentionally done in order to impinge on the Plaintiff's constitutional rights to religion and substantive due process. Although the liberty interests here are clearly not absolute, as they must be balanced by the states interest in preserving the welfare of children – see e.g. *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) and *Martinez v. Mafchir*, *supra*, 35 F.3d at 1490 – under the circumstances alleged, the individual Defendants would have been on notice that their conduct violated established constitutional law. The facts alleged in the amended complaint demonstrated that reasonable officials would have understood that what they were doing violated Plaintiffs' constitutional rights. *See Rinehart v. Smart,* 2006 WL 1525939, pg. 5 (W.D. Okla. 2006)(denying motion to dismiss based on qualified immunity because the alleged facts as presented did "not create an objectively reasonable suspicion that plaintiffs' children were in danger of abuse or neglect and instead indicate defendants . . . may have had some alternative motive in pursuing an investigation against the plaintiff"); *but see Hidahl v. Gilpin County Dept. of Soc. Srvs.,* 938 F.2d 1150, 1154

(10th Cir. 1991); *Whitcomb v. Jefferson County Dept. of Soc. Srvs.,* 685 F.Supp. 745, 747 (D. Colo. 1987).

Finally, because there is no indication or allegation at this point of the existence of extraordinary circumstances that would have prevented the individual Defendants from knowing that their actions were unconstitutional – which is the last step in my analysis – the individual Defendants are unable to prevail on their qualified immunity defense under Fed. R. Civ. P. 12(b)(6). *See Gomes v. Wood, supra*, 451 F.3d at 1134 ("where the right is clearly established, a defendant should only rarely be able to succeed with a qualified immunity defense"). As such, the motion to dismiss Plaintiffs' § 1983 claim against the individual Defendants is denied.

### VI. Injunctive Relief Claim [Second Claim for Relief]

As to Plaintiffs' claim for injunctive relief, I first note that claims for purely prospective relief may be adjudicated without running afoul of the Eleventh Amendment. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Rinehart v. Smart, supra,* at pg. 5 (ruling that Eleventh Amendment immunity does not preclude a suit against a state official which seeks only prospective injunctive relief in order to end a continuing violation of federal law). However, I conclude that Plaintiffs amended complaint fails to state a claim for injunctive relief under Fed. R. Civ. P. 12(b)(6).

"It is well settled an injunction must be narrowly tailored to remedy the harm shown." *Garrison v. Baker Hughes Oilfield Operations, Inc*., 287 F.3d 955, 962 (10th Cir. 2002); *Rinehart v. Smart, supra,* at pg. 5; *see also* Fed.R.Civ.P. 65(d). "Broad injunctions that merely instruct the enjoined party not to violate a statute" are impermissible. *Id.* (citations omitted).

Plaintiffs assert, in a general and conclusory manner, that "Defendants' abuse of Plaintiffs' constitutional rights is continuing, and will continue unless enjoined" and, as a result, Plaintiffs "request an injunction precluding Defendants' continuing efforts to deny the Starkeys' parental rights, and to discriminate against Plaintiffs based on their religion." The only factual allegation in Plaintiffs' amended complaint that could be construed as supporting their conclusory assertion that Defendants will act in the future to violate Plaintiffs' constitutional rights is the contention that "[f]rom on or about January 5, 2006, to present, [two of the individual Defendants] have threatened to interfere with Ms. Bedra Starkey's plan to adopt the children." I conclude that Plaintiff's claim for injunctive relief fails to state a claim upon which relief can be granted as it is overly broad, speculative and is not narrowly tailored to end an alleged violation of federal law. *See Rinehart v. Smart, supra,* at pg. 5 (dismissing plaintiffs' request to enjoin the defendant social workers "from violating the constitutional rights of plaintiffs and other Oklahoma parents in the future ... [as s]uch a request is not narrowly tailored to end an alleged violation of federal law"). Defendants' motion to dismiss as to Plaintiffs' claim for injunctive relief is therefore granted as to all Defendants.

### VII. State Law Claims [Third - Seventh Claim for Relief]

Finally, Defendants seek dismissal of Plaintiffs' state law tort claims pursuant to the Colorado Governmental Immunity Act, C.R.S. §§ 24-10-101, *et seq.* (the "CGIA").

A. Social Services Defendants

I first conclude that to the extent Plaintiffs assert state law claims against the social services Defendants – for breach of fiduciary duty, defamation, negligence, infliction of emotional distress, and conspiracy – such claims are barred by the Eleventh Amendment. *See Pennhurst*

16

*State School & Hosp. v. Halderman*, *supra*, 465 U.S. at 121 ("a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment").

B. Individual Defendants

As to the state law claims against the individual Defendants, the CGIA provides immunity for a public employee for any claim for injury which lies in tort or could lie in tort, *see* C.R.S § 24-10-106(1), "unless the act or omission causing injury was willful and wanton" as is alleged here  C.R.S. § 24-10-118(2)(a).  *See also* C.R.S. § 19-3-309.

A motion to dismiss invoking the CGIA raises a subject matter jurisdiction issue.   *Padilla ex rel. Padilla v. School Dist. No. 1 in City and County of Denver,* 25 P.3d 1176, 1180 (Colo. 2001); *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974).  When the facts concerning jurisdiction under the CGIA are in dispute, the court is charged with conducting an evidentiary hearing before ruling on the jurisdictional issue.  *See Maestas v. Lujan,* 351 F.3d 1001, 1018 (10th Cir. 2003); *Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916, 927 (Colo. 1993).

Plaintiffs specifically request an evidentiary hearing to determine jurisdiction over their state law claims and "to determine Plaintiffs' compliance with the notice requirements" under the CGIA.  *See Trinity Broadcasting v. City of Westminster, supra*; *Tidwell ex rel. Tidwell v. City and County of Denver,* 83 P.3d 75, 79 (Colo. 2003).  Pursuant to C.R.S. § 24-10-108, when "a public entity raises the issue of sovereign immunity prior to or immediately after the commencement of discovery, the court shall suspend discovery, except any discovery necessary to decide the issues of sovereign immunity, and shall decide such issue on motion."  As a result, I

grant Defendants' motion to dismiss as to Plaintiffs' state law claims against the social services Defendants, but reserve ruling on the motion as to Plaintiff's state law claims against the individual defendants pending an evidentiary hearing.

Accordingly, for the reasons set forth herein, it is therefore ORDERED that Defendants' Motion to Dismiss [Doc # 5] is GRANTED IN PART and DENIED IN PART as follows:

1. The motion to dismiss is GRANTED as to all of Plaintiffs' claims against Defendants, Boulder County Social Services, as well as Doreen Miller, Brian Russell, Holly Smith, Barbara Park, Julie Kintzing, and Ann Baldwin, *in their official capacities*, and are DISMISSED WITH PREJUDICE.  As a result, these Defendants are DISMISSED AS PARTIES from this case and are AWARDED their costs;

2. The motion to dismiss is GRANTED as to Plaintiffs' claim for Injunctive Relief (Second Claim for Relief) and this claim is DISMISSED WITH PREJUDICE as to all Defendants;

3. The motion to dismiss is DENIED as to Plaintiffs' civil rights claim based on 42 U.S.C. § 1983 (First Claim for Relief) against Doreen Miller, Brian Russell, Holly Smith, Barbara Park, Julie Kintzing, and Ann Baldwin, *in their individual capacities*;

4. The motion to dismiss is HELD IN ABEYANCE as to Plaintiffs' state law claims (Third, Fourth, Fifth, Sixth and Seventh Claim for Relief) against Doreen Miller, Brian Russell, Holly Smith, Barbara Park, Julie Kintzing, and Ann Baldwin, *in their individual capacities pending* an evidentiary hearing on Defendants' Colorado Governmental Immunity Act defense.  As such, I SUSPEND any discovery, except discovery necessary to decide the issues of sovereign immunity under the CGIA; and

5. A scheduling hearing is set in this matter for January 9, 2007, at 9:30 a.m.

Dated:  November 21, 2006, in Denver, Colorado.

                                          BY THE COURT:

                                            s/Lewis T. Babcock
                                          LEWIS T. BABCOCK, CHIEF JUDGE